UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JERRY THOMAS,

        Petitioner,

v.                                Case No. 2:02-CV-338-FTM-29DNF

JAMES V. CROSBY, JR.[1],

        Respondent.
_____/

**OPINION AND ORDER**

THIS CAUSE comes before the Court on Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. #1) signed on July 21, 2002 ("Petition") (Doc. #1). Petitioner challenges a judgment of conviction entered on November 14, 1997, by the Twentieth Judicial Circuit Court in Charlotte County, Florida. The State filed a Response in opposition (Doc. #10) supported by exhibits (cited as "Exhibit #"), to which Petitioner filed a Reply (Doc. #12). Upon review of the Petition, the Response, the exhibits, and Petitioner's Reply, the Court determines that habeas relief should be denied for the reasons set forth below.

**I.**

Petitioner was charged with two counts of Possession of Cocaine with Intent to Sell (Counts One and Three), two counts of

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, James V. Crosby, Jr., the current Secretary of the Florida Department of Correction, is substituted as the proper party Respondent for Michael W. Moore.

Sale of Cocaine (Counts Two and Four) and Felonious Possession of a Firearm (Count Five) in state case no. 97-244-CF. Petitioner proceeded to a jury trial on November 14, 1997 on counts One and Two only. Count Three was dismissed, and counts Four and Five were *nolle prossed* by the state. The jury found Petitioner guilty as charged of counts One and Two. On February 10, 1998, Petitioner was sentenced to 36 months in prison on count One and he was placed on 25 years' probation on count Two, with the condition that he spend the first eleven and one-half years in state prison.

Petitioner's appellate counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), and Petitioner filed a pro se brief, raising the issues of whether there was sufficient evidence to support probable cause and the jury's verdict, and whether the trial court's failure to answer a jury question prejudiced the appellant. On direct appeal, the Second District Court of Appeal affirmed the conviction and sentence, but remanded with directions that the written sentence be conformed to the oral pronouncement. <u>Thomas v. State</u>, 742 So.2d 508 (Fla. 2d DCA 1999). The appellate court wrote:

> Jerry Thomas appeals his convictions and sentence for possession and sale of cocaine. We determine that no reversible error occurred during his trial and affirm his convictions and sentence. We remand, however, to correct the written sentence to conform to the oral pronouncement.
>
> The trial court orally pronounced Thomas's sentence to be 36 months' incarceration on count I for possession of cocaine and 25 years' probation on count II for sale

>   of cocaine, with the condition that Thomas spend the first 11 ½ years in state prison. The written sentence imposes 11 ½ years' state prison followed by 25 years' probation. "When there is a discrepancy between the written sentence and the oral pronouncement of sentence, the latter prevails." Brammer v. State, 554 So.2d 671 (Fla. 2d DCA 1990). Therefore, we must remand the written sentence with directions that the trial court conform it to the oral pronouncement. See id. at 671.
>
>   Affirmed and remanded only to correct the written sentence.

Id., 742 So. 2d at 509. The mandate was issued on November 10, 1999.

Petitioner next filed a Rule 3.850 motion asserting 1) his Fourth Amendment rights were violated because the undercover detective involved in the sting operation trespassed on Petitioner's property to observe matters used to support a finding of probable cause for the search warrant; 2) his Fourth Amendment rights were violated because there were insufficient facts to support a finding of probable cause for the search warrant; 3) his Sixth Amendment rights were violated because an associate of Petitioner's additional (not primary) trial counsel represented Petitioner's co-defendant; 4) Petitioner's trial counsel was ineffective for failing to call Robert Nails; 5) counsel was ineffective for failing to call the informant; and 6) counsel was ineffective for not introducing at trial jewelry that Petitioner purportedly received in pawn from William Thomas ("Frenchie") (no relation).

The trial court entered an order summarily denying grounds One

through Three of the rule 3.850 motion. An evidentiary hearing was directed to be held on grounds Four and Five and ultimately, the court rejected all claims raised. Petitioner's collateral appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), concluding there was no meritorious argument to support a contention that the state court committed significant reversible error. On July 10, 2002, the state district court affirmed without written opinion. Thomas v. State, 825 So. 2d 390 (Fla. 2d DCA 2002) [table]  The mandate was issued on August 1, 2002.

Prior to the conclusion of his rule 3.850 proceedings, Petitioner filed a petition for writ of habeas corpus in the state district court on November 14, 2001. Petitioner's state petition alleged that his appellate counsel in his direct appeal provided ineffective assistance. The state responded. On October 15, 2001 the state district court denied the petition without written opinion. Thomas v. State, 804 So. 2d 1257 (Fla. 2d DCA 2001)[table].

## II.

Because Petitioner filed his Petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of

Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 538 U.S. 634, 638-639 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003), cert. denied, 540 U.S. 1155(2004); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001).

"Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. Mitchell v. Esparza,540 U.S. 12, 17(2003); Clark, 335 F.3d at 1308-10; Washington v. Crosby, 324

F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is contrary to the clearly established precedent of the Supreme Court "'(1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.' Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir.2000) (citing Williams v. Taylor, 529 U.S. 362, 406, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000))." Stephens v. Hall, 407 F. 3d 1195, 1202 (11th Cir. 2005). See also Vincent, 538 U.S. at 639; Andrade, 538 U.S. at 75-77. A state court decision does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Esparza, 540 U.S. at 16; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003), cert. denied, 540 U.S. 1222 (2004).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context

6

where it should apply. Bottoson, 234 F.3d at 531. The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. 782, 793; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Esparza, 540 U.S. at 17-18; Vincent, 538 U.S. at 639.

### III.

In Ground One, Petitioner claims his rights under the Fourth Amendment were violated, alleging evidence was illegally obtained and used against him at trial. In Ground Two, he argues that there was no probable cause for the search warrant that produced the allegedly illegally obtained evidence. Petitioner relies on the same supporting facts for both grounds, which he initially raised on direct appeal. Petitioner asserts that on March 18, 1997, a detective and police informant trespassed on his property to gain information to obtain a search warrant. Petitioner contends that marked money seized the next day from his residence pursuant to the search warrant was illegally obtained.

Petitioner's substantive Fourth Amendment claims are barred by Stone v. Powell, 428 U.S. 465, 494-495(1976). In order to review Petitioner's Fourth Amendment claims, this Court would have to conclude that Petitioner did not have a full and fair opportunity to litigate his claims in a state court proceeding. In Mincey v.

7

<u>Head</u>, 206 F.3d 1106, 1125 (11th Cir. 2000), citing <u>Stone</u>, the Eleventh Circuit reiterated that:

> where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

<u>Id</u>. 428 U.S. at 494-95. Petitioner asserted a Fourth Amendment challenge on direct appeal in his pro se brief, and the Second District Court of Appeals rejected his argument. Thus, Petitioner had the opportunity to litigate this claim before the state courts but was unsuccessful. Petitioner also raised these grounds in his Rule 3.850 motion, but the trial court summarily denied the grounds as improper for Rule 3.850 proceedings, stating as follows:

> 3.   First, defendant argues that his Fourth Amendment rights were violated due to evidence obtained illegally which ensued probable cause for a search warrant preceding the seizure of convicting evidence. Similarly, defendant argues that there was not sufficient evidence to support probable cause.
>
> 4.   The Court finds that defendant's first two grounds could have or should have been raised on direct appeal, and thus, are not cognizable under rule 3.850. See <u>Zeigler v. State</u>, 452 So.2d 537, 538-539 (Fla. 1984)(argument that judgment and sentence were obtained by presentation of evidence in violation of Fourth Amendment rights was not cognizable in rule 3.850 motion); <u>see also Montana v. State</u>, 597 So.2d 334, (Fla. 1st DCA 1992) (allegations of insufficiency of evidence were improperly raised in Rule 3.850 motion); see also Fla.R.Crim.P. 3.850(b); <u>see also Oats v. State</u>, 638 So.2d 20(Fla.1994) (postconviction motions cannot be used as second appeal for issues that were or could have been

raised on appeal).

(Exhibit 18, pp. 1-2). Petitioner's argument to this Court that the state trial court should have reconstrued the substantive Fourth Amendment challenges as ineffective assistance claims is unavailing. The record in this cause demonstrates that the state court's analysis of the merits of Petitioner's claim of Fourth Amendment violations did not result in the unreasonable application of clearly established Federal law or in an unreasonable determination of the facts of Petitioner's case. Relief will be denied as to Grounds One and Two.

Ground Three charges that Petitioner's counsel was operating under a conflict of interest because Petitioner's co-defendant was represented by a partner from Petitioner's counsel's law firm. Petitioner further claims that his in-court waiver of the conflict was not an intelligent waiver, as he did not understand how the conflict could affect him. Petitioner contends that this uninformed waiver and the conflict of interest deprived him of a fair trial. The state trial court rejected this claim as meritless in the initial order on Petitioner's Rule 3.850 motion, stating as follows:

> 5. Defendant [...] argues that his Sixth Amendment rights were violated based on conflict of interest in that defendant's attorney (Thomas Marryott) and the co-defendant/state witness' attorney (Amber Weaver) worked in the same office. Defendant contends that he was prejudiced since his attorney was adequately prevented from proper examination of the co-defendant/state witness (William Thomas).

> 6. Initially, the Court notes that defendant's primary attorney was Leonard Johnson and that Thomas Marryott merely appeared as additional counsel. See id. Moreover, defendant indicated that he had no objection with Mr. Johnson being solely responsible for the co-defendant/state witness. See id. Thereafter, Mr. Johnson engaged in the cross-examination of the co-defendant/state witness. See id. at 626-656. The Court also notes that Mr. Johnson made several objections during the direct and re-direct examination of the co-defendant/state witness. See id. at 575-626 and 656-665. For these reasons, the Court finds that defendant's claim that his Sixth Amendment rights were violated because of conflict of interest is without merit.

Exhibit 18, p. 2. The state court's determination that Petitioner's Sixth Amendment rights were not violated by the conflict of interest was not contrary to established federal law, was not objectively unreasonable, and was not based on an unreasonable determination of the facts. Ground Three will be denied.

In Ground Four, Petitioner alleges his trial counsel was ineffective because he failed to introduce favorable evidence and witnesses for the defense before the jury. Petitioner first contends his counsel should have introduced the ring that Petitioner claimed was the subject of the transaction, not drugs as the police had charged. Petitioner also alleges his attorney was ineffective for failing to call a witness to support the story of the ring transaction. These allegations were raised as various claims of ineffective assistance in Petitioner's Rule 3.850 motion for postconviction relief and state evidentiary proceedings were held on July 24, 2000, and also on October 16, 2000. Exhibit 20,

vol. VI, VII. By order filed on December 20, 2000, the state postconviction court denied the remaining grounds. The court held as follows:

> THIS CAUSE comes before the Court after an evidentiary hearing on the remaining grounds of the Defendant's 3.850 Motion for Postconviction Relief. The court having reviewed the motion, the State's responses, the court file, and having conducted and evidentiary hearing finds as follows:
>
> 1. On February 10, 1998, the Defendant was sentenced in the above referenced case after a jury trial. Pursuant to Second District Court of Appeal's November 10, 1999 Mandate and Opinion, the judgment and sentence was amended to reflect a sentence of 36 months in prison for possession of cocaine with intent to sell or deliver and 25 years probation for sale of delivery of cocaine, with the condition that the Defendant spend the first 11.5 years in prison.(See attached Verdict, Judgment and Sentence, Mandate and Opinion.)
>
> 2. On October 29, 1999, the Defendant filed a 3.850 Motion for Postconviction Relief, and on November 18, 1999, the State was directed to respond to the motion. (See attached order).
>
> 3. On April 6, 2000, this Court denied portions of the 3.850 motion and set an evidentiary hearing on the remaining allegations that trial counsel was ineffective for failing to subpoena or call Robert Nails, a witness and Scott Baber, the confidential informant [footnote omitted].
>
> 4. On July 24, 2000, the evidentiary hearing was held with the Defendant being represented by court-appointed counsel, Russell T. Kirshy, Esquire, wherein the Court heard testimony from the Defendant's trial counsel, Leonard M. Johnson, Esquire.(See attached Transcript of July 24, 2000 Proceedings, which will be referenced as "Tl.")  The hearing was continued to a later date.
>
> 5. On August 24, 2000, this Court clarified that the continuation of the evidentiary hearing would additionally address the allegation, contained only in the Defendant's memorandum of law in support of his 3.850 motion, that trial counsel had in his possession jewelry that the Defendant received in pawn from William

Thomas (a.k.a. "Frenchie"), a state witness, which counsel failed to use as evidence at trial. [Footnote omitted.]

    6. On October 16, 2000, the continuation of the July 24, 2000 evidentiary hearing took place, wherein the Court heard additional testimony from Mr. Johnson, the Defendant's trial counsel, and testimony from the Defendant. (See attached Transcript of October 16, 2000 Proceedings, which will be referenced as "T2.")

    7. Thus, this order pertains to the Defendant's 3.850 allegations that trial counsel was ineffective for failing to subpoena or call Robert Nails, a witness, and Scott Baber, the confidential informant, and for falling (sic) to use as evidence at trial jewelry that the Defendant received in pawn from William Thomas (a.k.a. "Frenchie"), a state witness.

    8. To prevail on a claim of ineffective assistance of counsel, the Defendant must demonstrate that counsel's performance was deficient and there is a reasonable probability that the outcome of the proceedings would have been different. See Strickland v. Washington, 466 U.S.668(1984); Williamson v. Dugger, 651 So.2d 84 (Fla. 1994).

    9. At the outset, the Court notes that the probable cause affidavit details an alleged drug transaction between William Thomas (a.k.a. "Frenchie") and the Defendant occurring at the Defendant's residence on or about March 18, 1997. (See attached Probable Cause Affidavit and Information.)

    10. With respect to the claim that trial counsel was ineffective for failing to subpoena or call Robert Nails, Mr. Johnson, the Defendant's trial counsel, testified that Mr. Nails was a potential witness, who according to the Defendant, could provide corroboration that Mr. Nails was present when Frenchie came to the Defendant's home, observed a conversation between Frenchie and the Defendant, which had nothing to do with drugs, and could provide corroboration that Frenchie acknowledged that Frenchie was merely at the Defendant's home to pay the Defendant. (See T1 at pp.6-7)

    11. The court takes judicial notice that Mr. Nails was deposed on August 28, 1997. (See attached Deposition of Robert Nails.)

12. Mr. Johnson testified that when he deposed Mr. Nails, there were several problems as Mr. Nails had difficulty recalling the date of the transaction, Mr. Nails indicated that he heard Frenchie tell the Defendant that Frenchie was there to give the Defendant money, but that Mr. Nails did not know what the money was for, and that Mr. Nails observed Frenchie hand the Defendant money and the Defendant hand "something" to Frenchie, but that Mr. Nails did not know what the Defendant handed to Frenchie. (See T1 at p. 7; T2 at pp. 4-6; Nails Deposition at pp. 3-8.)

13. The Court takes judicial notice that Mr. Nails was served on November 10, 1997 for trial by the Defendant. (See attached Affidavit of Service and Subpoena for Robert Nails.)

14. Mr. Johnson testified that Mr. Nails was not called to testify because his testimony was not going to be of significant benefit, and that Mr. Nails was potentially impeachable because of the deposition testimony, wherein Mr. Nails gave the wrong date and times, and admitted to drinking on the date of the alleged drug transaction. (See T1 at p.8; T2 at p.4; Nails Deposition at pp. 3-6.)

15. Additionally, Mr. Johnson testified that in light of other defense strategies such as challenging the viewpoint of the undercover officer, Detective Goff, and raising the issue that the Defendant was not searched before or after the alleged drug transaction, a decision was made not to call Mr. Nails. (See Tl at pp.19-21; attached Trial Testimony of Detective Goff on November 12-13, 1997 at pp. 306-329 and pp. 356-366.)

16. Moreover, Mr. Johnson testified that Mr. Nails corroborated the State's contention that Frenchie was at the Defendant's home, Frenchie gave the Defendant money, and that there had been a hand-to-hand transaction between Frenchie and the Defendant. (See T1 at p.8 and pp. 20-21; T2 at pp. 4-6; Nails Deposition at pp.3-8.)

17. Next, the Defendant alleges that trial counsel was ineffective for failing to subpoena or call Scott Baber, the confidential informant.

18. Initially, the Court takes judicial notice that Mr. Baber was deposed on October 6, 1997 and that Mr. Baber was served on September 23, 1997 for trial by the Defendant. (See attached Deposition, Affidavit of

Service, and Subpoena for Scott Baber.)

19. Mr. Johnson indicated that a tactical decision was made not to call Mr. Baber since Mr. Baber was the informant, claiming that he purchased drugs from the Defendant and made arrangements to drive individuals to the Defendant's home to purchase drugs. (See Tl at pp. 9-10; T2 at pp. 6-8; Baber Deposition at pp. 3-4 and pp. 12- 26.) Specifically, Mr. Johnson indicated that Mr. Baber merely corroborated the State's case. (See Tl at p. 21; T2 at pp. 7-8; Baber Deposition at pp. 3-4 and pp. 12-26.)

20. Lastly, the Defendant contends that trial counsel was ineffective for falling (sic) to use as evidence at trial jewelry received by the Defendant in pawn from William Thomas (a.k.a. "Frenchie"), a state witness.

21. Mr. Johnson acknowledged that the Defendant provided him with items of jewelry, and that the Defendant informed him that the money that the Defendant received from Frenchie was for a pawn of jewelry rather than for a sale of cocaine. (See T1 at pp. 12-13; T2 at p. 12.) Further, Mr. Johnson testified that this defense (that the hand-to-hand transaction between the Defendant and Frenchie related to a pawn of jewelry) was put forth at trial. (See T2 at p. 12; attached Trial Testimony of the Defendant on November 13,1997 at pp. 478-480 and pp. 505-511.)

22. Further, Mr. Johnson testified that noting (sic) about the jewelry identified it as belonging to Frenchie. (See T1 at p. 13; T2 at p. 12 and p. 20.)

23. Mr. Johnson indicated that the jewelry was not used at trial since at trial, Frenchie denied that he had ever given jewelry to the Defendant as collateral for a loan, and Mr. Johnson testified that there was nothing to be gained by admitting the jewelry as evidence. (See T1 at pp. 12-14;T2 at pp. 12-13; attached Trial Testimony of William L. Thomas (a.k.a. ""Frenchie") on November 14, 1997 at p.625.)

24. Having considered all of the testimony and court file, and having had the opportunity to observe the demeanor of the witnesses, the Court finds that in accordance with the principles set forth in Strickland v. Washington, 466 U.S.668 (1984), the evidence fails to demonstrate that trial counsel was ineffective for

>failing to subpoena or call Robert Nails, a witness, and Scott Baber, the confidential informant, or for falling to use as evidence at trial jewelry that the Defendant received in pawn from William Thomas (a.k.a. "Frenchie"). Accordingly, it is
>
>ORDERED AND ADJUDGED that the remaining claims of the Defendant's 3.850 Motion for Postconviction Relief are DENIED. The Defendant has thirty (30) days to appeal this order.

Exhibit 19, pp. 1-6.

It is evident that the correct standard was used in evaluating Petitioner's claims of ineffective assistance. The next issue to be addressed is whether the state court's adjudication of the issues was contrary to Strickland. In Strickland, the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687-88; Williams v. Taylor, 529 U.S. 362 (2000). The Supreme Court has required a petitioner to make sufficient factual allegations of both Strickland prongs in order to be entitled to federal habeas relief. E.g., Hill v. Lockhart, 474 U.S. 52 (1985).

Petitioner has not shown either deficient performance or prejudice. The state court's determination that trial counsel had

not provided ineffective assistance of counsel was not contrary to established federal law, was not objectively unreasonable, and was not based on an unreasonable determination of the facts in light of the evidence presented at the Rule 3.850 proceedings.

Accordingly, it is now

**ORDERED**:

Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus is **DENIED**. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close this file.

**DONE AND ORDERED** at Ft. Myers, Florida on this ___29th___ day of July, 2005.

JOHN E. STEELE
United States District Judge

Copies to:
Petitioner
Respondent
SA/as